May it please the Court, my name is Charlene Chen, a certified law student, and I represent the petitioner, Anna Biocini, in this case. Your Honors, may I please reserve two minutes for rebuttal? You may do so, but you have to keep track of your own time. Thank you, Your Honor. You see the clock in front of you there. So her name is Biocini? Yes, that's correct, Your Honor. All right, I just wanted to make sure. Judge O'Scanlan and I would have said Cheney if you hadn't told us. This Court today will decide whether Ms. Biocini, a drug informant for the U.S. government, merits protection against deportation to Colombia, a country notorious for violent retribution against informants. Drug informants play a critical role in law enforcement investigations against narco-trafficking and drug crime. Let me interrupt you. There's a lot of stuff we kind of understand, having read the briefs and pretty well prepared. I think the first question you have to really say for me is, why do I have jurisdiction to even do this case? This is a withholding of removal case. It seems to me that I can only have jurisdiction here if there is a constitutional question or a question of law. Is this either one of those? Yes, Your Honor, it is. What is it? It is a legal question that we bring forward. It's a question of law. Why is it that? It's a legal question because when the BIA applied its Frantescu factors, it failed to apply all of them, and as such, applied the incorrect legal standard. And in an I.M. Ortiz v. Holder, this Court has held that application of a legal—incorrectly applying the legal standard is a legal question, Your Honor. So at that point, then I get through, and I am then stuck with whether matter of Y.L. can be applied retroactively and about the matter of In re Frantescu, right? That's correct, Your Honor. I don't know whether I even said that right. I'm an old I.O. guy. All right. Did the BIA address all the factors? No, Your Honor. The BIA did not address either the facts and circumstances underlying her case or the danger to the community. The BIA failed to— Just a minute. They noted that she played a key role in a conspiracy to distribute between 5 and 15 kilograms of cocaine. That's correct, Your Honor. They rejected that she was only minimally involved because she was only a conspirator. Your Honor— They need not really engage in a lockstep application of the factors, do they? I mean, I got a couple of cases I could cite you about, what I've just asked you. Right, Your Honor. There has been some movement in the matter of Frantescu analysis. However, recently this court has come out with Blandino v. Medina v. Holder. And in that case, this court has reiterated that the matter of Frantescu test requires the individualized analysis tailored through these four factors. The BIA in its analysis did indicate that it was considering the nature of her crime and the type of sentence she received. However, they did not— Given the discretion that I have to give to the BIA, and that I'm really looking at their discretion, and I have this case dead on point that says we don't have to lockstep apply the factors, how can I say based on what they went through here that they didn't apply the factors? Your Honor, they did not examine factors that we would have liked to see in their analysis here, such as the hallmark of particularly serious crimes, and that's the use of violence. That was absent in this case, and unmentioned. Further, the U.S.— Counsel, didn't the decision reference all the specific facts about the drug trafficking crime, the length of her sentence, the BIA decisions pointing out that large drug trafficking crimes are inherently dangerous and harmful to the community? Doesn't that cover all the Frantescu factors? No, Your Honor, respectfully. It's missing. It's missing. What is missing? In its recounting of that, the BIA cited Matter of Gonzales in saying that there is a presumptive category of particularly serious crimes and that drug trafficking fits under that category. However, Matter of Frantescu at its heart requires this individualized analysis, an individualized analysis of her crime and whether her conviction was— But where was that failed to be done? Your Honor, here the BIA merely says that, in our view, an alien who knowingly participates in a drug trafficking conspiracy assumes the risk that such antisocial activity will be of a scope sufficient. That's a general observation, but in context with the specific findings that were made, isn't that enough? I would say no, Your Honor, such as the U.S. attorney here did not, in this case, actually said that her activity closely resembled that of a middleman and further that she cooperated with law enforcement and received leniency in her plea and sentencing. Well, I guess what I want to—I want to focus in on exactly what Judge O'Scanlan is focusing in on. And I have this case, which is dead on, which says you don't have to do it in a lockstep way. So here's what they said. They noted she played a key role in the conspiracy to distribute. They rejected the argument. She was minimally involved. She—they affirmed the conclusion that in the matter of Gonzalez, where the applicant did not contest his trafficking conviction, was a PSC. So they did all of that. And I guess I'm trying to figure out how that doesn't address all the factors. Your Honor, the key factor that it does not address is danger, is the dangerousness that she has to the community. There is no individualized analysis of whether her crime and the circumstances underlying it presents that further danger to the community. Even Matter of Nam, which questioned the necessity of the four-part analysis, conceded that the heart of the Matter of Frantescu analysis is dangerousness. And it's not enough to point out many, many cases in which the BIA has concluded that a large drug trafficking crime is inherently dangerous? It's not enough to say that? Your Honor, I would say that, again, in this new case coming from this court, Matter of Blandino v. Medina, that there is no per se categorical exclusion for drug trafficking crimes. Go ahead and answer that question, because I don't want to cut off your answer. I think that's an important question. Sure, Your Honor. And so here, where we cannot categorically exclude her, Matter of Frantescu at its heart requires this individualized analysis. Well, but once the BIA determined that the crime was particularly serious, isn't it presumed that the immigrant is a danger to the community? Your Honor, again, I would say— I mean, bottom line, they found that the crime was particularly serious, and it seems to me that it's presumed she's a danger to the community. Your Honor, I would say that even though they found this particularly serious crime determination, that it was an imperfect and incomplete analysis, and that the rationale underlying— Your Honor, that's precisely what we're questioning here. No violence was done to any person or property. So the danger aspect is not within the analysis of the BIA. Counsel, you're down to 45 seconds. You may want to reserve those. Yes, Your Honor. You may do so. Reserve the remaining time. Thank you. Thank you. We'll hear from the government. You may proceed, Counsel. Good morning, Your Honor. My name is Andrew McLaughlin, and I represent the Respondent Attorney General of the United States in this case. The petitioner would like to put this case forward as an informant case. The government would prefer to see it as a case of a person who committed an extraordinary offense, a drug trafficking crime in our society. She was caught and eventually cooperated with the government, and she did provide substantial assistance to the government. And the benefit that she received from that is she was allowed to plead to only one offense, and the rest of her offenses were dismissed. And the mandatory 10-year-to-life sentence was reduced to something substantially less, and she got 30 months in jail. What is there in the record that would support the conclusion of dangerousness? Your Honor, I think one of the fundamental misunderstandings that the petitioner has put forward throughout this case, and it shows up again in their supplemental authority, is the misunderstanding of how Matter of Francesco is applied in drug trafficking cases. And the Court has observed this a couple of times. In all of the cases in which Matter of Francesco has been applied in a drug trafficking case, the Board has reached the conclusion, and in some cases in extreme detail, outlining what the danger to society in drug trafficking cases is. So in Matter of U.M., that was upheld by this Court in Urbana-Mauricio, the Board outlined exactly what it is that's a danger to society about drug trafficking crimes. So you have that, and that's where the inherently dangerous crime statement comes along with it. But I want you to be responsive, Mr. McLaughlin, to Ms. Chen's argument that Francesco requires individualized examination and something to support dangerousness. It does. And if you examine this in the context of cases involving drug trafficking crimes, as opposed to other kinds of crimes as in Blondie and Medina, if you examine it in the context of drug trafficking crimes, what you find is that the Board is telling the immigration judges and, frankly, the petitioners, in putting forward their cases, that, look, we're already there. We're already at particularly serious. You need to look at the periphery, the other details about this case that might make this particular drug trafficking crime that rare offense, as the Attorney General referred to it in matter of Y.L., that would not be a drug trafficking crime, would not be a particularly serious offense. The Board, by setting... I go back to my first question, and that is, what can you point to in the record which would substantiate the dangerousness aspect, other than the generic conclusion? There are references to danger throughout the record. My impression, however, what the Board was doing here is saying, look, we've already told you in matter of Y.L. that this is an inherently dangerous crime. And by citing matter of Y.L. and by the immigration judge citing matter of Y.L., they were adopting... I mean, there's an entire page of matter of Y.L., which is quoting matter of U.M., which describes the danger inherent in drug trafficking crimes. So you start with that issue. The issue is set aside by the citation to matter of Y.L. And then the Board went that step further and explored the peripheral details of the offense to try to make sure that there wasn't something about this particular drug trafficking crime that might not fit within the category of particularly serious crimes. So my contention is that the Board, by citing matter of Y.L. to you, was in fact telling you, look, we've already got the danger part down. You need to tell us what it was about your offense that makes you different. And this petitioner outlined three different things that made her different. First of all, she needs to get some credit for her cooperation. Well, in fact, that's what happened in this case. Instead of getting 10 years to life, she got 30 months. And in fact, she became not a per se particularly serious crime. If it had been five years, it would have been a particularly serious crime. Well, what was her role in this drug trafficking conviction? Well, that's a disputed fact in the case. The petitioner contends that she was merely helping out friends communicate with each other and pass drugs back and forth between each other. That's basically what her contention was. The government contends that she was much more actively involved and that the pounds and pounds of drugs that were involved in her transactions make her a very significant drug dealer in this matter. She clearly was not the kind of person that you had in Miguel Miguel. Miguel Miguel was a runner between the street and the drug dealer carrying a little packet of marijuana or cocaine in that case and the drugs back. This is not that sort of drug trafficking case, and petitioner can't point to any circumstances associated with the crime in this case that would make it in any way not a particularly serious crime. Now, do you agree that Frontescue is the governing case in this to be applied? Frontescue is the general standard for by which particularly serious crimes must be evaluated. And it lays out four factors. It does. And it's not very apparent how the board took each factor up. I mean, you may well win the case on remand, but if we follow an orderly procedure, shouldn't we follow what the law says should be followed? No. The slavish following of those four factors isn't what's required, and the board has made that clear a couple times. And you don't have to actually specify each criteria. But that isn't my point here. My point is the board is entitled to rely upon what has already been said. And what the board has always said and has consistently said is that drug trafficking crimes are inherently dangerous. So the danger element, we don't really need to talk about it. Now, we just told you Matter of While says for a page exactly why it is that drug trafficking is dangerous. So let's move on and discuss the things that we have to talk about, the specific applications to this particular case. And that's what they did. They looked at the specific applications in this particular case. And what those demonstrated is this is not a minimal drug trafficking offense. This is not a peripheral involvement. This is not a small quantity. This is an enormous drug conspiracy. And the fact that she was only a conspirator as opposed to somebody who was actually handing poison to people for money doesn't make a difference. The worry that I have is that it seems to me that if we go, it seems to me there's two real ways to go to particularly serious if I read the law. One is under Matter of While. And I don't know that I could even dispute what you're saying if we go under Matter of While. But the BIA didn't stop there. They didn't stop with Matter of While. Well, they did both, right? Yeah. They went to Matter of Gonzales. Correct. Which says that they were looking at the factors on Matter of Frantescu or whatever, however you say it. Oh, boy, I don't know what it is. What the board said was we follow While, but even if we went strictly on the Frantescu factors, she would lose on that basis as well. Well, and the worry that I have is after saying that, I'm not sure they did go through the factors. I mean, when you read what they said, what do they say more about the factors of Frantescu? The question is what? I mean, they've got to talk about the underlying facts and circumstances. Right. They talked about the circumstances. Yes. The facts, I'm not sure we really got a lot about. I see some discussion about the scope of the conspiracy and how much drugs were involved. I can't see that as anything other than circumstances associated with the underlying crime. I think that's very thoroughly done. The conviction itself, the sentence she received, the kind of conspiracy we're talking about here, the specific circumstances of this specific crime were covered. What the board didn't say is we adopt the inherently dangerous holding of U.M. or Y.L. They didn't say that. They just simply cited Y.L. to you. But that's the presumption in Y.L. too. But Y.L. is a different theory. So it was hard to suggest that they were going to use Y.L. for Frantescu. The theory, what the attorney general was trying to do in Y.L. was describe for the petitioner what they were going to need to prove to satisfy that rare case that U.M. referred to. U.M. said, look, this is inherently dangerous. It's going to be a rare drug trafficking crime. Francesco, by the way, did exactly the same thing. Francesco said there will be cases, there will be crimes that will be per se, that will be themselves drug trafficking crimes. Y.L. didn't go that far. Y.L. said I'm not making a per se crime here. I'm telling you that there will be a rare drug trafficking crime, and here's the kind of thing you need to show to us. And you're not arguing per se in this case? In this case I'm doing both. On a strict application of Y.L., this case fails many of the Y.L. factors, and therefore this would be one of those cases that cannot get past the bar. It can't be one of those rare cases. And your law on this subject is not Blandina Medina. Your law on the subject is Miguel Miguel that said that that is correct. That is the law of this circuit. So the board is correct. The only question that you have to deal with is whether there was some sort of retroactivity concern associated with the application of Y.L. And I would tell you clearly, given this particular case, given the facts of this case, at the time of her plea, at the time of her committing the offense, at the time of her conviction, there was no possibility that she could have believed that that offense would not be. All right. Thank you, counsel. Your time has expired. Thank you. Ms. Chen, you have 45 seconds. 41 seconds according to that. Thank you, Your Honor. First, I would like to note that the BIA never uses the word danger in its analysis. It uses the word antisocial and harmful effect to society, but that does not equate danger. Further, Judge Breyer, in the criminal sentencing hearing, noted that she was not a danger to the community. Second, I would like to point out that the government waived this argument of Y.L. in their brief. Further, that they did not argue that there was a per se exclusion for drug trafficking crimes. And third, I'd like to point out that the government points to this huge amount of kilos of cocaine, but the immigration judge only found one kilo of cocaine. And for all of these reasons, we simply ask the court remand for a finding under the correct legal standard. Thank you, counsel. Your time has now expired. Thank you, Your Honor. The case just argued will be submitted for decision, but while counsel are still in the courtroom, on behalf of the panel, I would like to express our appreciation to Ms. Chen and to her supervising attorney, Ms. Cooper, for helping us out on this case today. Thank you very much.
judges: Noonan, O'scannlain, Smith